UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

RAYMOND LI, a Foreign Citizen, and
JETLEV, LLC, a Delaware Corporation,

      Plaintiff,

v.

**JURY DEMAND**

FLYBOARD, INC., a Florida corporation;
MARATHON FLORIDA KEYS
KITEBOARDING L.L.C., a Florida Limited
Liability Company; and
EMERALD COAST FLYBOARD, A Florida
Corporation

      Defendants.
_____/

## VERIFIED COMPLAINT FOR PATENT INFRINGEMENT

      Plaintiffs, RAYMOND LI (hereinafter "Li") and JETLEV, LLC., a Delaware corporation (hereinafter "Jetlev") (collectively "Plaintiffs"), by and through their undersigned counsel, hereby allege in their Complaint against defendants FLYBOARD, INC., a Florida corporation, MARATHON FLORIDA KEYS KITEBOARDING L.L.C., a Florida Limited Liability Company (hereinafter "Marathon Kiteboarding"), and EMERALD COAST FLYBOARD, a Florida corporation (hereinafter "Emerald Coast") (collectively "defendants") as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement of United States Patent Nos. 7,258,301 ("the '301 Patent"); 7,735,772 ("the '772 Patent"); and 7,900,867 ("the '867 Patent") (collectively, "the Patents-In-Suit") arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

**JURISDICTION AND VENUE**

2. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

3. This Court has personal jurisdiction over the defendants pursuant to Florida's long-arm statute F.S. § 48.193 (1)(b), (f)(1)-(2) in that the defendants are each (a) operating, conducting, engaging or carrying on a business in the State of Florida; (b) committing tortious acts within the State of Florida; and (c) engaging in substantial and not isolated activity within the State of Florida.

4. Venue is proper in this district under 28 U.S.C. §§1391 and 1400(b).

5. Joinder of the defendants is proper under Fed. R. Civ. P. 20(a)(2) and 35 U.S.C. §299 as the relief sought against each defendant arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the using, importing into the United States, offering for sale, and/or selling of the same accused product or process, and matters of law and fact common to all defendants will arise in the action.

**THE PARTIES**

6. Raymond Li is a Canadian citizen.

7. Jetlev is a Delaware corporation with its principal place of business at 1111 Old Griffin Road, Dania Beach, FL 33004.

8. Flyboard, Inc. is a Florida corporation having a principal place of business at 202 S Hwy 441, Lady Lake, FL 32162.

9. Marathon Kiteboarding is a Florida limited liability company having a principal place of business at 4980 Ocean Terrace, Marathon, FL 33050.

10. Upon information and belief, Emerald Coast is a Florida corporation having a principal place of business at 8275 East Bay Blvd., Navarre, FL 32566.

## THE PATENTS-IN-SUIT

11. On August 21, 2007, U.S. Patent No. 7,258,301, entitled "Personal Propulsion Device," was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO"). A true and correct copy of the '301 Patent is attached hereto as Exhibit A.

12. On June 15, 2010, U.S. Patent No. 7,735,772 entitled "Personal Propulsion Device," was duly and lawfully issued by the USPTO. A true and correct copy of the '772 Patent is attached hereto as Exhibit B.

13. On March 8, 2011, U.S. Patent No. 7,900,867 entitled "Personal Propulsion Device," was duly and lawfully issued by the USPTO. A true and correct copy of the '867 Patent is attached hereto as Exhibit C.

14. Raymond Li is the sole inventor and owner of the Patents-In-Suit.

15. Jetlev is the exclusive licensee of the Patents-In-Suit.

16. The Patents-In-Suit are in full force and effect as of the date of this Complaint and at all times relevant to the allegations herein.

## FACTUAL BACKGROUND

17.     Years ago, Raymond Li conceived of and began developing his concept for a water-powered jetpack. In the mid-2000's, Mr. Li began prototyping and testing his designs, and also filed a series of patent applications to protect his novel water-powered personal propulsion device concepts.

18.     In August 2008, a fully operational water-powered jetpack prototype was completed and a series of successful flights followed. A few months later, various clips from these test flights made their way online to a number of video sharing websites. The excitement and fervor resulting from these videos generated tens of millions of views worldwide.

19.     Following the excitement over this never-before-seen product, Jetlev was established in Dania Beach, Florida, where Jetlev currently manufactures its water-powered personal propulsion devices (dubbed "the Jetlev R200") for sale to the public. The Jetlev R200 has garnered worldwide attention and publicity due to its unique, pioneering water-powered personal flight experience.

### Flyboard, Inc.

20.     Flyboard, Inc. is in the business of importing, using, selling, and offering to sell water-powered personal propulsion devices called "The Flyboard" or the "Zapata Racing Flyboard."

21.     Flyboard, Inc. claims to be the exclusive distributor of "The Flyboard" for the Unites States of America, Canada, Caribbean, Central America, and South America. Flyboard, Inc. also identifies itself as a dealer for "The Flyboard" for Southern Florida, Central Florida, Northeast Florida, and the Eastern Panhandle. Flyboard, Inc. sells and offers to sell "The Flyboard" throughout the United States and in this District.

22. Flyboard, Inc. holds training classes for customers and potential customers on the operation and use of "The Flyboard," during which Flyboard, Inc. personnel demonstrate and teach the use of "The Flyboard."

23. On March 22, 2012, undersigned counsel for Jetlev and Mr. Li sent a cease and desist letter to Flyboard, Inc. demanding that FlyBoard, Inc. cease all demonstration, use, sale, offers for sale, manufacturing, importation, and distribution of the infringing Zapata Racing Flyboard in the United States. Flyboard, Inc. has willfully continued to import, use, offer for sale and sell the infringing "Flyboard" since March 22, 2012.

24. Upon information and belief, Flyboard, Inc. has placed infringing products into the stream of commerce with the knowledge and/or understanding that such products are sold to and used by customers in this District. In addition, Flyboard, Inc. knowingly induced, and continues to knowingly induce, infringement within this State and within this District by contracting with others to market, use and sell infringing products with the knowledge and intent to facilitate infringing sales and use of the products by others within this District and by creating and/or disseminating product information and other instruction materials for the infringing products with like mind and intent.

### Marathon Kiteboarding

25. Marathon Kiteboarding is in the business of importing, using, selling, and offering to sell "The Flyboard" or the "Zapata Racing Flyboard."

26. Marathon Kiteboarding holds training classes for customers and potential customers on the operation and use of "The Flyboard," during which Marathon Kiteboarding personnel demonstrate and teach the use of "The Flyboard."

27. Upon information and belief, Marathon Kiteboarding has placed infringing products into the stream of commerce with the knowledge and/or understanding that such products are sold to and used by customers in this District. In addition, Marathon Kiteboarding knowingly induced, and continues to knowingly induce, infringement within this State and within this District by contracting with others to market, use and sell infringing products with the knowledge and intent to facilitate infringing sales and use of the products by others within this District and by creating and/or disseminating product information and other instruction materials for the infringing products with like mind and intent.

### Emerald Coast

28. Emerald Coast is in the business of importing, using, selling, and offering to sell "The Flyboard" or the "Zapata Racing Flyboard."

29. Emerald Coast holds training classes for customers and potential customers on the operation and use of "The Flyboard," during which Emerald Coast personnel demonstrate and teach the use of "The Flyboard."

30. Upon information and belief, Emerald Coast has placed infringing products into the stream of commerce with the knowledge and/or understanding that such products are sold to and used by customers in this District. In addition, Emerald Coast knowingly induced, and continues to knowingly induce, infringement within this State and within this District by contracting with others to market, use and sell infringing products with the knowledge and intent to facilitate infringing sales and use of the products by others within this District and by creating and/or disseminating product information and other instruction materials for the infringing products with like mind and intent.

## COUNT I
### (Infringement of U.S. Patent No. 7,258,301)

31.     Plaintiffs re-allege and incorporate paragraphs 1-30 from above as though fully set forth herein.

32.     Flyboard, Inc. has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '301 Patent by importing, making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

33.     Flyboard, Inc. also has and continues to indirectly infringe one or more claims of the '301 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically, Flyboard, Inc. has actively induced, and continues to induce, the infringement of one or more claims of the '301 Patent at least by actively inducing the infringing use of "Flyboard" personal propulsion devices by Flyboard, Inc.'s customers in the United States. Flyboard, Inc. knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '301 Patent. Flyboard, Inc. has also contributorily infringed and continues to contributorily infringe the '301 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

34.     Plaintiffs provided written notice to FlyBoard, Inc. of its infringement of the '301 Patent on March 22, 2012.

35.     FlyBoard, Inc.'s infringement of the '301 Patent has been willful and deliberate.

36. Marathon Kiteboarding has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '301 Patent by importing, making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

37. Marathon Kiteboarding also has and continues to indirectly infringe one or more claims of the '301 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically, Marathon Kiteboarding has actively induced, and continues to induce, the infringement of one or more claims of the '301 Patent at least by actively inducing the infringing use of "Flyboard" personal propulsion devices by Marathon Kiteboarding's customers in the United States. Marathon Kiteboarding knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '301 Patent. Marathon Kiteboarding has also contributorily infringed and continues to contributorily infringe the '301 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

38. Marathon Kiteboarding's infringement of the '301 Patent has been willful and deliberate.

39. Emerald Coast has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '301 Patent by importing, making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

40. Emerald Coast also has and continues to indirectly infringe one or more claims of the '301 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically, Emerald Coast has actively induced, and continues to induce, the infringement of one or more claims of the '301 Patent at least by actively inducing the infringing use of "Flyboard" personal propulsion devices by Emerald Coast's customers in the United States. Emerald Coast knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '301 Patent. Emerald Coast has also contributorily infringed and continues to contributorily infringe the '301 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

41. Emerald Coast's infringement of the '301 Patent has been willful and deliberate.

42. Defendants' infringement of the '301 Patent will continue unless enjoined by this Court.

43. As a direct and proximate result of defendants' infringement of the '301 Patent, Plaintiffs have suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Plaintiffs are entitled to relief.

## COUNT II
**(Infringement of U.S. Patent No. 7,735,772)**

44. Plaintiffs re-allege and incorporate paragraphs 1-43 from above as though fully set forth herein.

45. Flyboard, Inc. has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '772 Patent by importing,

making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

46. Flyboard, Inc. also has and continues to indirectly infringe one or more claims of the '772 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically, Flyboard, Inc. has actively induced, and continues to induce, the infringement of one or more claims of the '772 Patent at least by actively inducing the infringing use of "Flyboard" personal propulsion devices by Flyboard, Inc.'s customers in the United States. Flyboard, Inc. knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '772 Patent. Flyboard, Inc. has also contributorily infringed and continues to contributorily infringe the '772 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

47. Plaintiffs provided written notice to FlyBoard, Inc. of its infringement of the '772 Patent on March 22, 2012.

48. FlyBoard, Inc.'s infringement of the '772 Patent has been willful and deliberate.

49. Marathon Kiteboarding has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '772 Patent by importing, making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

50.     Marathon Kiteboarding also has and continues to indirectly infringe one or more claims of the '772 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically, Marathon Kiteboarding has actively induced, and continues to induce, the infringement of one or more claims of the '772 Patent at least by actively inducing the infringing use of "Flyboard" personal propulsion devices by Marathon Kiteboarding's customers in the United States. Marathon Kiteboarding knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '772 Patent. Marathon Kiteboarding has also contributorily infringed and continues to contributorily infringe the '772 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

51.     Marathon Kiteboarding's infringement of the '772 Patent has been willful and deliberate.

52.     Emerald Coast has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '772 Patent by importing, making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

53.     Emerald Coast also has and continues to indirectly infringe one or more claims of the '772 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically, Emerald Coast has actively induced, and continues to induce, the infringement of one or more claims of the '772 Patent at least by actively inducing the infringing use of "Flyboard" personal

propulsion devices by Emerald Coast's customers in the United States. Emerald Coast knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '772 Patent. Emerald Coast has also contributorily infringed and continues to contributorily infringe the '772 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

54. Emerald Coast's infringement of the '772 Patent has been willful and deliberate.

55. Defendants' infringement of the '772 Patent will continue unless enjoined by this Court.

56. As a direct and proximate result of defendants' infringement of the '772 Patent, Plaintiffs have suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Plaintiffs are entitled to relief.

## COUNT III
### (Infringement of U.S. Patent No. 7,900,867)

57. Plaintiffs re-allege and incorporate paragraphs 1-56 from above as though fully set forth herein.

58. Flyboard, Inc. has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '867 Patent by importing, making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

59. Flyboard, Inc. also has and continues to indirectly infringe one or more claims of the '867 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically,

Flyboard, Inc. has actively induced, and continues to induce, the infringement of one or more claims of the '867 Patent at least by actively inducing the infringing use of "Flyboard" personal propulsion devices by Flyboard, Inc.'s customers in the United States. Flyboard, Inc. knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '867 Patent. Flyboard, Inc. has also contributorily infringed and continues to contributorily infringe the '867 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

60. Plaintiffs provided written notice to FlyBoard, Inc. of its infringement of the '867 Patent on March 22, 2012.

61. FlyBoard, Inc.'s infringement of the '867 Patent has been willful and deliberate.

62. Marathon Kiteboarding has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '867 Patent by importing, making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

63. Marathon Kiteboarding also has and continues to indirectly infringe one or more claims of the '867 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically, Marathon Kiteboarding has actively induced, and continues to induce, the infringement of one or more claims of the '867 Patent at least by actively inducing the infringing use of "Flyboard" personal propulsion devices by Marathon Kiteboarding's customers in the

United States. Marathon Kiteboarding knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '867 Patent. Marathon Kiteboarding has also contributorily infringed and continues to contributorily infringe the '867 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

64.     Marathon Kiteboarding's infringement of the '867 Patent has been willful and deliberate.

65.     Emerald Coast has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalent, one or more claims of the '867 Patent by importing, making, using, offering to sell and/or selling "Flyboard" personal propulsion devices and associated components in the United States without authority and in violation of 35 U.S.C. §271.

66.     Emerald Coast also has and continues to indirectly infringe one or more claims of the '867 Patent by inducing others to infringe and/or contributing to the infringement of others, including end users of its infringing "Flyboard" personal propulsion devices. Specifically, Emerald Coast has actively induced, and continues to induce, the infringement of one or more claims of the '867 Patent at least by actively inducing the infringing use of "Flyboard" personal propulsion devices by Emerald Coast's customers in the United States. Emerald Coast knew or should have known that its conduct would induce others to use its "Flyboard" personal propulsion devices in a manner that infringes the '867 Patent. Emerald Coast has also contributorily infringed and continues to contributorily infringe the '867 Patent by importing into the United States, using, selling and/or offering to sell within the United States infringing

products that constitute a material part of the claimed inventions that are not staple articles of commerce suitable for substantial noninfringing use.

67. Emerald Coast's infringement of the '867 Patent has been willful and deliberate.

68. Defendants' infringement of the '867 Patent will continue unless enjoined by this Court.

69. As a direct and proximate result of defendants' infringement of the '867 Patent, Plaintiffs have suffered and will continue to suffer irreparable injury and damages in an amount not yet determined for which Plaintiffs are entitled to relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the Court:

A. Enter a judgment that defendants have infringed, induced infringement and contributed to the infringement of the '301 Patent.

B. Enter a judgment that defendants have infringed, induced infringement and contributed to the infringement of the '772 Patent.

C. Enter a judgment that defendants have infringed, induced infringement and contributed to the infringement of the '867 Patent.

D. Order defendants to pay damages to adequately compensate Plaintiffs for defendants' patent infringement, including an award of defendants' profits from its infringement of the Patents-In-Suit as well as Plaintiffs' lost profits, together with pre- and post-judgment interest;

E. Enter a permanent injunction pursuant to 35 U.S.C. § 283, restraining and enjoining defendants and their respective officers, agents, servants, employees, attorneys, customers, licensors, suppliers and those in concert or participation with them from any further

sales, offers for sale, importation or use of infringing products and services and any other infringement of the Patents-In-Suit, whether direct or indirect;

F. Find that defendants' patent infringement was willful and malicious and award treble damages to Plaintiffs under 35 U.S.C. §284;

G. Find this to be an exceptional case of patent infringement under 35 U.S.C. §285 and award reasonable attorneys' fees, costs, and expenses incurred by Plaintiffs in prosecuting this action; and

H. Award such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by a jury for all claims and issues so triable.

Dated:  July 02, 2012                            Respectfully Submitted,

                                                     s/ Nicholas R. Lewis
                                                   Nicholas R. Lewis, Esq.
                                                        nlewis@cwiplaw.com
                                                        Florida Bar No. 16146
                                                  Garrett Ari Barten, Esq.
                                                        gbarten@cwiplaw.com
                                                        Florida Bar No. 55371
                                                 CHRISTOPHER & WEISBERG, P.A.
                                                 200 East Las Olas Boulevard, Suite 2040
                                                 Fort Lauderdale, Florida 33301
                                                 (954) 828-1488 (Telephone)
                                                 (954) 828-9122 (Facsimile)
                                                 *Attorneys for Plaintiffs*

388086

## VERIFICATION

I, Raymond Li, hereby verify that I have read and understood the foregoing Complaint and that the information herein is true and correct to the best of my knowledge and belief and I am duly authorized to make this verification as a plaintiff in this action.

Dated: June 29, 2012

_____
Raymond Li

## VERIFICATION

I, Benjamin White, President of Jetlev, LLC, hereby verify that I have read and understood the foregoing Complaint and that the information herein is true and correct to the best of my knowledge and belief and I am duly authorized to make this verification as a plaintiff in this action.

For Jetlev, LLC,

Dated: June 29, 2012

Benjamin White, President